IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADINA MCCOLLOUGH, individually and
on behalf of all others similarly situated,

         Plaintiff,

v.                            No. 16-CV-03777

SMARTE CARTE, INC.,

         Defendant.

**DEFENDANT SMARTE CARTE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

## I.    INTRODUCTION

This is the latest of a series of recent putative class-action lawsuits seeking recovery for alleged violation of the Illinois Biometric Information Privacy Act (740 ILCS 14/1 *et seq*.) ("BIPA" or the "Act"). BIPA was enacted in 2008 to protect public welfare, security and safety by requiring written consent and certain disclosures when a private entity conducts biometric-facilitated financial transactions or security screenings where certain biometric data is tied to an individual's finances or other personal information. 740 ILCS 14/5. BIPA provides a private right of action for violations that result in data breach, identity theft or other injury. None of these circumstances arise or apply in the context of this case.

Plaintiff Adina McCollough ("Plaintiff") alleges in her Complaint that Defendant Smarte Carte, Inc. ("Smarte Carte") owns and operates storage lockers located in Chicago Union Station. (Compl. ¶ 18.) According to Plaintiff, Smarte Carte uses a biometric fingerprint-scanning process for the rental of these lockers. (*Id*. ¶ 19.) Specifically, Plaintiff alleges that the fingerprint is used as a "key" to unlock and access the lockers after the user or another person

pays for the rental with cash or a credit card. (*Id.* ¶¶ 3, 21–23.) Plaintiff does not allege that her fingerprint was used to pay for the locker or access her finances, or that it can otherwise be tied to any of her personal information. Plaintiff nevertheless contends that Smarte Carte violated BIPA because it did not obtain her written consent or make disclosures concerning the collection, storage, use and destruction of "biometric identifiers" and "biometric information" as defined under the Act.[1] (*Id.* ¶ 12.) Plaintiff seeks statutory damages and injunctive relief for herself and on behalf of a class of other persons in the State of Illinois. (*Id.* ¶ 13.)

Plaintiff's claims under BIPA should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Nowhere in the Complaint does Plaintiff contend that she suffered any harm, loss or injury. Plaintiff does not allege that her fingerprint was misappropriated and misused. Nor does she allege that it was compromised by a data breach, identity theft or other unauthorized disclosure causing substantial risk of harm or out-of-pocket loss. Plaintiff does not even allege that her biometric data went beyond the fingerprint scanner. She merely alleges that Smarte Carte did not strictly comply with the Act and that it somehow has been unjustly enriched. (Compl. ¶¶ 12, 55, 67, 73.) This is not sufficient to satisfy standing under Article III of the U.S. Constitution. Nor does BIPA otherwise confer Article III standing, and Plaintiff cannot plead a viable claim, because a right of action is limited to persons who have been "aggrieved" by a violation of the Act, which does not include Plaintiff under the circumstances of this case.[2]

---

[1] The question of whether the use of certain unique characteristics from a fingerprint to unlock and access a locker—but not pay for the rental or access personal information—leads to potential BIPA liability relative to the definitions of "biometric identifier" and "biometric information" will be an important issue should the Complaint survive the Motion to Dismiss. *See* 740 ILCS 14/10.

[2] The claim for unjust enrichment should be dismissed because, in addition to lack of Article III standing, unjust enrichment is not an independent cause of action, Plaintiff has an adequate remedy at law, and Plaintiff admits that she received the benefit of the locker rentals and does not allege any detriment resulting from the purported BIPA violation.

## II.     LEGAL STANDARD

A complaint must be dismissed when a court lacks subject-matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Subject-matter jurisdiction is lacking where a plaintiff does not establish standing to sue in federal court in accordance with Article III of the U.S. Constitution.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In order to establish Article III standing, the plaintiff must allege (among other things) an injury-in-fact that is concrete and particularized and actual or imminent.  *Id.* at 560–61.  Abstract injury is not enough.  Nor is it sufficient for the injury to be merely conjectural or hypothetical.  *Id.*; *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

A complaint also must be dismissed if it fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  To avoid dismissal under Rule 12(b)(6), a complaint must contain factual allegations showing that the plaintiff is entitled to relief, and those allegations must raise the right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint cannot withstand a motion to dismiss when the claims are based on conclusory allegations or mere recitations of legal elements.  *Id.*  Nor can a complaint withstand a motion to dismiss where the factual allegations are insufficient to plausibly suggest a right to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.     ARGUMENT

### A.     Plaintiff Suffered No Injury and Lacks Article III Standing

The party invoking federal court jurisdiction bears the burden of establishing standing under Article III.  *Lujan*, 504 U.S. at 561.  To do so, Plaintiff must show that she "has sustained or is immediately in danger of sustaining some direct injury."  *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004).  Plaintiff cannot satisfy this burden, and the Complaint should be dismissed pursuant to Rule 12(b)(1), because Plaintiff has not identified any harm, loss or

- 3 -

injury or that she is in immediate danger of sustaining some direct injury. Instead, Plaintiff alleges that she rented a storage locker on five occasions and that—while she placed her fingerprint on a scanner to unlock and access the lockers—Smarte Carte did not obtain her written consent or inform her in writing that biometric data was being used or advise her of the length of time such data would be stored. (Compl. ¶¶ 27–34.) Importantly, however, nowhere does Plaintiff allege that her fingerprint (or anyone else's fingerprint) has been misused or even compromised and, therefore, she cannot demonstrate an injury-in-fact that is concrete and particularized and actual or imminent.

Courts have refused to recognize an injury where personally identifiable information is merely retained in violation of a statute. In *Sterk v. Redbox Automated Retail, LLC*, for example, the plaintiff alleged that the defendant failed to destroy records containing his personally identifiable information in violation of the Video Privacy Protection Act. 672 F.3d 535, 536 (7th Cir. 2012). The Seventh Circuit held that retaining personal information does not by itself constitute an injury. *Id.* at 538–39. The court reasoned as follows:

> How could there be injury, unless the information, not having been destroyed, were disclosed? If, though not timely destroyed, it remained secreted in the video service provider's files until it was destroyed, there would be no injury.

*Id.* at 538. The same outcome is warranted here in that Plaintiff alleges merely that Smarte Carte scanned her fingerprint without informing her how long it would be stored in violation of BIPA. Plaintiff does not allege any data breach, identity theft or other unauthorized disclosure. *See also Padilla v. Dish Network LLC*, 2013 WL 3791140, at *3 (N.D. Ill. July 19, 2013) (holding that retention of personally identifiable information in violation of Satellite Home Viewer Extension and Reauthorization Act does not satisfy standing under Article III).[3]

---

[3] Cited authority only published on electronic database are attached (alphabetically) as **Group Exhibit A**.

Plaintiff does not even allege any threat of injury. Even if she had, speculative harm based on something that may or may not happen in the future is insufficient to satisfy Article III standing. In *Clapper v. Amnesty Int'l USA*, the U.S. Supreme Court decided that human-rights organizations did not have Article III standing to challenge the Foreign Intelligence Surveillance Act because they could not show that their communications with suspected terrorists were intercepted by the government in violation of the statute. 133 S. Ct. at 1146–50 (2013). According to the Court, fear of future harm alone is "too speculative" and "too attenuated" to satisfy standing under Article III. *Id.* at 1147 and n.5 ("We have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (emphasis in original).

Recent Seventh Circuit decisions have distinguished *Clapper* with respect to Article III standing. However, those decisions do not change the outcome in this case because, unlike here, both arose in the context of actual data breaches where there was imminent danger of direct injury to the plaintiffs based on actual harm to other customers. In *Remijas v. Neiman Marcus Group*, the Seventh Circuit ruled that the plaintiffs plausibly alleged Article III standing because, unlike in this case, hackers obtained both the plaintiffs' and other customers' credit card information, and the other customers had already experienced fraudulent charges as a result of that hack. 794 F.3d 688, 693–95 (7th Cir. 2015) ("Why else would hackers break into a store's database and steal customers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those customers' identities.").[4]

---

[4] In *Lewert v. P.F. Chang's China Bistro, Inc.*, the Seventh Circuit followed its decision in *Remijas* relative to imminent danger of direct injury under Article III because a national restaurant chain likewise incurred a large-scale data breach resulting in fraudulent charges from the theft of customer credit and debit card information. 2016 WL 1459226, at *3–5 (7th Cir. Apr. 14, 2016).

Nor does a technical violation of BIPA, without a corresponding injury, satisfy standing under Article III because the violation of a right created under state law does confer federal court standing under the U.S. Constitution. *Conrad v. Boiron, Inc.*, 2015 WL 7008136, at \*2 (N.D. Ill. Nov. 12, 2015) ("A state statute cannot confer Constitutional standing ..."); *Bohn v. Boiron, Inc.*, 2013 WL 3975126, at \*3 (N.D. Ill. Aug. 1, 2013) ("the ICFA allows for injunctive relief where appropriate, however, this does not alleviate [plaintiff's] burden of alleging an injury in fact necessary to establish Article III standing.") (internal quotation omitted); *see also Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 433–35 (S.D.N.Y. 2015) (holding that the violation of a state statute is irrelevant in determining whether a plaintiff has satisfied its burden of pleading a sufficient injury-in-fact under Article III); *Taylor v. West Marine Prods., Inc.*, 2014 WL 1248162, at \*2 (N.D. Cal. Mar. 26, 2014) ("But Article III imposes a mandatory standing requirement. A state legislature may relax standing requirements for the state courts, but may not do so for cases heard in federal court.").[5] Furthermore, as discussed below, BIPA cannot confer Article III standing under the circumstances of this case because Plaintiff does not have a right of action under the Act.

### B. Plaintiff Lacks Standing under BIPA and Cannot Plead a Viable Claim

Plaintiff seeks statutory damages and injunctive relief under BIPA in Counts I and II of the Complaint. Section 20 of the Act provides a limited right of action as follows:

> Any person *aggrieved by a violation of this Act* shall have a right of action in a State circuit court or as a supplemental claim in federal court against an offending party. A prevailing party may recover for each violation:

---

[5] Whether violation of a *federal* statute can satisfy standing under Article III is currently pending before the U.S. Supreme Court. *See Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015). That decision, however, will not be determinative in this case because states "cannot alter [the requirements of Article III] simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013).

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, which is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20 (emphasis added). In order to recover under BIPA, not only must Plaintiff prove that Smarte Carte violated the Act, Plaintiff also must demonstrate that she was "aggrieved" by such violation. Accordingly, the BIPA claims should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6). Plaintiff lacks statutory standing, and does not plead a viable claim under the Act, because nowhere does she allege any injury. Plaintiff similarly cannot recover liquidated damages under BIPA because such recovery would not be a reasonable estimate of actual damages given that Plaintiff has suffered no harm.

### 1. Plaintiff Has No Right of Action Because She Is Not a Person Aggrieved by a Violation of the Act

Plaintiff cannot recover under BIPA because she was not "aggrieved" by a violation of the Act. BIPA does not define "aggrieved," and Smarte Carte has not located any reported decisions interpreting "aggrieved" for purposes of the Act. Nevertheless, in construing a statute, the primary objective is to ascertain and effectuate the legislature's intent, and the best indicator of that intent "is the statutory language itself, which must be given its plain and ordinary meaning." *Gurba v. Cmty. High Sch. Dist. No. 155*, 40 N.E.3d 1, 4, 2015 IL 118332, at ¶ 10 (Ill. 2015). The words of the statute, moreover, "cannot be read in a fashion that would render other words or phrases meaningless, redundant or superfluous." *People v. Trainor*, 196 Ill. 2d 318, 332, 752 N.E. 2d 1055, 1063 (2001); *see also People v. Lewis*, 223 Ill. 2d 393, 402, 860 N.E. 2d

- 7 -

299, 305 (2006) ("[Courts] will not depart from the plain statutory language by reading into the statute exceptions, limitations or conditions that the legislature did not express.").

Section 20 is unambiguous and requires a plaintiff to establish more than a technical violation of BIPA.  Plaintiff must also demonstrate that she was "aggrieved" by a violation of the Act.  740 ILCS 14/20.  In the context of statutory standing, the plain and ordinary meaning of "aggrieved" requires an allegation of injury.  Indeed, a person "aggrieved" is defined in other Illinois statutes as one who is "injured."  *See* 775 ILCS 5/1-103(B) ("'Aggrieved party' means a person who is alleged or proved to have been *injured* …") (emphasis added); 70 ILCS 405/3.20 ("'Aggrieved party' means any person whose property, resources, interest or responsibility is being *injured* or impeded in value or utility …") (emphasis added).[6]

Where "aggrieved" is not defined in a statute, courts interpreting the term have likewise held that a plaintiff must demonstrate an injury resulting from the alleged violation of the statute.  Notably, the plaintiff in *Padilla v. Dish Network LLC* similarly alleged that the defendant's retention of his personally identifiable information and failure to send him annual notices concerning that information violated the Satellite Home Viewer Extension and Reauthorization Act ("SHVERA").  2013 WL 3791140, at *1 (N.D. Ill. July 19, 2013).  That statute provides a right of action to "any person aggrieved by an act of a satellite carrier in violation of this section."  47 U.S.C. § 338i(7).

---

[6] Other Illinois privacy statutes provide for a right of action without requiring an injury.  For example, the Cable and Video Customer Protection Law provides that "[a]ny customer … may pursue alleged violations of this Act by the cable or video provider in a court of competent jurisdiction."  220 ILCS 5/22-501(r)(4).  BIPA, by contrast, limits a right of action to persons "aggrieved" by a violation of the Act, which evidences a legislative intent to limit recovery of damages or injunctive relief to those who have sustained actual harm, loss or injury.

The defendant in *Padillia* filed a motion to dismiss because the plaintiff did not allege any harm resulting from the alleged violation of the statute. In addition to successfully arguing lack of Article III standing, the defendant asserted that a person is not "aggrieved" for purposes of SHVERA when his or her personal information has been retained, but where he or she has not alleged any injury. The Court agreed with the defendant. Because the statute required that a person be "aggrieved" in order to recover damages, the court dismissed the claim and held that the plaintiff "is not 'aggrieved' and so may not recover statutory damages without plausibly alleging actual damages." 2013 WL 3791140, at *4–5; *see also Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538–39 (7th Cir. 2012) (allegation that defendant failed to destroy records containing plaintiff's personal information was insufficient to make him an "aggrieved" person under the Video Privacy Protection Act); *Williams v. Merle Pharmacy, Inc.*, 2015 WL 6143879, at *4–5 (C.D. Ill. Oct. 19, 2015) (plaintiff who did not receive payroll information in accordance with Illinois Wage Payment and Collection Act was not "aggrieved" by a violation of the statute absent some harm).

BIPA similarly provides that only an "aggrieved" person has a right of action for violation of the Act, and thus requires a plaintiff to allege some harm, loss or injury, which Plaintiff has not alleged and cannot plead in this case. Not only is this construction of BIPA in line with statutory and case law precedent, it is the only construction consistent with a plain and ordinary reading of Section 20 without rendering words meaningless or superfluous and/or reading unexpressed exceptions into the statute. 740 ILCS 14/20. It also is the only construction consistent with the purpose of the Act as expressed by the legislative findings set forth in Section 5—to provide a private right of action for violations that result in data breach, identity theft or other injury from biometric-facilitated financial transactions or security screenings). 740 ILCS

14/5. *See also Diedrich v. Ocwen Loan Servicing, LLC*, 2015 WL 1885630, at *10 (E.D. Wis. Apr. 24, 2015) (plaintiffs were not "aggrieved" persons within the meaning of a Wisconsin statute concerning mortgage broker misconduct when plaintiffs could not show any damages caused by defendant's failure to respond to statutory request for information); *Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 471–73, 845 P.2d 685, 690–91 (1993) (Kansas Consumer Protection Act, which creates a right of action for a consumer "aggrieved" by a violation of the statute, requires a showing of actual harm caused by the statutory violation).

## 2. Plaintiff Cannot Recover Liquidated Damages under the Act Because She Suffered No Harm

BIPA allows a person aggrieved by a violation of the Act to recover the greater of actual damages or liquidated damages of $1,000 (for negligent violation) or $5,000 (for intentional or reckless violation). 740 ILCS 14/20(1) & (2). However, the provision for liquidated damages does not thereby alter or remove the precondition that Plaintiff must be a person "aggrieved" by a violation of BIPA to have a right of action against Smart Carte. In construing the Video Privacy Protection Act—which similarly provides for liquidated damages to a person "aggrieved" by a violation of the statute—the Seventh Circuit held that the plaintiff had to sustain an actual injury to recover because liquidated damages "are intended to be an estimate of actual damages." *Sterk*, 672 F.3d at 538. The court stated:

> True, subsection (c)(2)(A) allows $2,500 in "liquidated damages," without need to prove "actual damages," but liquidated damages are intended to be an estimate of actual damages, and if failure of timely destruction results in no injury at all because there is never any disclosure, the only possible estimate of actual damages for violating subsection (e) would be zero.

*Id*. (internal citation omitted). Accordingly, although the plaintiff in *Sterk* argued that it was unnecessary to prove actual damages to recover liquidated damages, the Court dismissed the claim given that the retention of the information did not result in any actual injury. *Id*. at 538–

- 10 -

39. The same result is appropriate here. *See also Padilla*, 2013 WL 3791140, at *4–5 (plaintiff could not recover liquidated damages under SHVERA based solely on defendant's retention of his personally identifiable information"); *Doe v. Chao*, 540 U.S. 614, 624–26 (2004) (claimant not entitled to liquidated damages under Privacy Act where he failed to show that he suffered actual damages as a result of the statutory violation).[7]

### C. Plaintiff Does Not State an Independent Claim for Unjust Enrichment

Plaintiff also attempts to state a claim for unjust enrichment in Count III. To prevail under this theory of recovery, a plaintiff must show that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). In this regard, Plaintiff alleges that she conferred benefit upon Smarte Carte to her detriment by using the lockers and providing her biometric data, and that retention of the money she paid for the locker rentals violates fundamental principles of justice, equity and good conscience. (Compl. ¶¶ 69–73.) Plaintiff's claim for unjust enrichment is not viable and should be dismissed pursuant to Rule 12(b)(6).

First, where a claim for unjust enrichment is based on the same conduct underlying a statutory claim, as in this case, the plaintiff cannot recover for unjust enrichment if the statutory claim is dismissed. As the Seventh Circuit ruled:

> A claim of unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery. Here, Siegel's theory

---

[7]The penalty per violation resulting from liquidated damages under BIPA on a class-wide basis would be entirely disproportionate to the technical violation alleged by Plaintiff with no harm, loss or injury. For this reason, the court in *In re Trans Union Corp. Privacy Litig.* refused to certify a class action under the Fair Credit Reporting Act where no actual damages were alleged. 211 F.R.D. 328, 350–51 (N.D. Ill. 2002) ("Although certification should not be denied solely because of the possible financial impact it would have on a defendant, consideration of the financial impact is proper when based on the disproportionality of a damage award that has little relation to the harm actually suffered by the class, and on the due process concerns attended upon such an impact.").

> of unjust enrichment is based on the defendants' conduct which he deemed unfair under the [Illinois Consumer Fraud Act]. We rejected his ICFA claim. And absent that the defendants engaged in an unfair practice, Siegel's unjust enrichment claim is not viable.

*Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010); *see also In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,* 60 F. Supp. 3d 914, 970–71 (N.D. Ill. 2014) (holding that when the plaintiffs' claims for unjust enrichment and restitution were predicated on claims for violations of the Sherman Act and the Commodity Exchange Act that could not succeed, the claims for unjust enrichment and restitution also had to be dismissed).

Second, because unjust enrichment is an equitable remedy, "it is only available when there is no adequate remedy at law." *DigaComm, LLC v. Vehicle Safety & Compliance, LLC*, 2009 WL 509736, at *8 (N.D. Ill. Mar. 9, 2009). Here, however, Plaintiff has an adequate remedy at law under BIPA, notwithstanding her inability to recover because she was not "aggrieved" by violation of the Act. *Id.* at *8–9; *see also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (holding that if an express contract governs the relationship between the parties, a claim for unjust enrichment must fail because "unjust enrichment is only available when there is no adequate remedy at law").

Lastly, other than conclusory allegations and the recitation of legal elements, Plaintiff has not plausibly alleged a claim for unjust enrichment because she has not alleged any detriment. To the contrary, Plaintiff alleges that she received the benefit of a storage locker rental on five occasions (Compl. ¶¶ 27–28), and she does not contend that Smarte Carte improperly over-charged her, somehow deceived her or engaged in other misconduct that would render the retention of her payments contrary to fundamental principles of justice, equity and good conscience. *Cleary*, 656 F.3d at 517–20. That Plaintiff rented a locker without allegedly providing written consent or receiving disclosures concerning the collection, storage, use and

destruction of alleged biometric data is not the type of purported detriment recoverable under a theory of unjust enrichment as a matter of law. *Id.* ("[M]ere violation of consumer's legal right to know about product's risks, without anything more, cannot support claim that manufacturer unjustly retained revenue from product's sale to consumer's detriment.").

## IV.     CONCLUSION

For all the foregoing reasons, Defendant Smarte Carte, Inc. respectfully requests the Court to grant its Motion to Dismiss.

Dated:  May 6, 2016                                             Respectively submitted,

                                                                                   SMARTE CARTE, INC.

                                                                                   By:  /s/ Joseph A. Strubbe

                                                                                          Joseph A. Strubbe
                                                                                          Frederic T. Knape
                                                                                          VEDDER PRICE P.C.
                                                                                          222 N. LaSalle Street
                                                                                          Chicago, IL  60601-1003
                                                                                          312/609-7500
                                                                                          jstrubbe@vedderprice.com
                                                                                          fknape@vedderprice.com

                                                                                          *Counsel for Smarte Carte, Inc.*

- 13 -

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel certifies that the foregoing **Defendant Smarte Carte Inc.'s Memorandum of Law in Support of Rule 12(b)(1) and 12(b)(6) Motion to Dismiss** was electronically filed with the Clerk of Court on May 6, 2016 using the CM/ECF system that will send notification of the filing to all parties of record.

By: <u>/s/ Joseph A. Strubbe</u>