**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ADINA MCCOLLOUGH, individually and on behalf of all others similarly situated, | ) ) ) | Jury Trial Demanded |
| Plaintiff, | ) ) | No. 16-cv-3777 |
| v. | ) ) | Hon. Sharon Johnson Coleman |
| SMARTE CARTE, INC., | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

Ilan Chorowsky, Esq.
Mark Bulgarelli, Esq.
**PROGRESSIVE LAW GROUP LLC**
140 S. Dearborn, Suite 315
Chicago, IL 60603
312-787-2717 (voice)
888-574-9038 (fax)

*Counsel for Plaintiff*

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND............................................................................................... 1

        A.  The Biometric Information Privacy Act (BIPA)........................................ 1

        B.  Plaintiff alleges that Defendant violated BIPA. ...................................... 3

III.    ARGUMENT..................................................................................................... 4

        A.  Plaintiff adequately alleges Article III standing....................................... 4

            1.  The Article III test................................................................................. 4

            2.  Plaintiff alleges informational injuries................................................ 5

            3.  Defendant unlawfully took Plaintiff's Biometrics................................ 7

            4.  Defendant's arguments are off-target.................................................. 7

        B.  Plaintiff is aggrieved.................................................................................. 9

        C.  Plaintiff's claim for injunctive relief is proper........................................ 14

        D.  Plaintiff states a claim for common law unjust enrichment....................... 14

IV.     CONCLUSION................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*American Surety Co. v. Jones,* 384 Ill. 222, 51 N.E.2d 122 (1943) ...................................................... 9

*Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217 (7th Cir. 1981) ................................................................. 12

*Angelopoulos v. Keystone Orthopedic Specialists, S.C.,* No. 12-cv-05836,
2015 U.S. Dist. LEXIS 63789 (N.D. Ill. May 15, 2015) ...................................................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................. 4

*Bensman v. U.S. Forest Serv.,* 408 F.3d 945 (7th Cir. 2005) ............................................................... 5

*Beyond Sys. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. 2015)) .......................................................... 8

*Cantrell v. City of Long Beach,* 241 F.3d 674 (9th Cir. 2001) ............................................................... 8

*Cleary v. Philip Morris Inc.,* 656 F.3d 511 (7th Cir. 2011) ................................................................... 15

*Compton v. Ubilluz,* 351 Ill. App. 3d 223, 811 N.E.2d 1225 (2nd Dist. 2004) ................................... 13

*Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013) ................................................................... 15

*Conrad v. Boiron, Inc.*, No. 13 C 7903, 2015 U.S. Dist. LEXIS 152981
(N.D. Ill. Nov. 12, 2015)........................................................................................................................ 8

*Diedrich v. Ocwen Loan Servicing, LLC,* No. 13-CV-693, 2015 U.S. Dist. LEXIS 53996
(E.D. Wis. Apr. 24, 2015*)* ..................................................................................................................... 11

*Doe v. Chao*, 540 U.S. 614 (2004) ........................................................................................................ 10

*Ehredt v. Forest Hospital, Inc.,* 142 Ill. App. 3d 1009, 492 N.E.2d 532 (1st Dist. 1986) ................ 14

*Espinoza v. Stokely-Van Camp,* 641 F.2d 535 (7th Cir. 1981)............................................................. 12

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) ....................................................................... 5

*First Nat'l Bank v. Department of Revenue,* 85 Ill. 2d 84, 421 N.E.2d 175 (Ill. 1981) ...................... 7

*Finstad v. Washburn Univ. of Topeka,* 252 Kan. 465, 845 P.2d 685 (1993) ...................................... 11

*FMC Corp. v. Boesky,* 852 F.2d 981 (7th Cir. 1988)............................................................................ 8

*Follman v. Vill. Squire, Inc.*, 542 F. Supp. 2d 816 (N.D. Ill. 2007) ..................................................... 10

*Glos v. People*, 259 Ill. 332, 102 N.E. 763 (1913) .................................................................. 9

*Greeling v. Abendroth,* 351 Ill. App. 3d 658, 813 N.E.2d 768 (4th Dist. 2004) ............................. 9

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ...................................................................... 6

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ........................................................... 5

*Heartwood, Inc. v. United States Forest Serv.*, 230 F.3d 947 (7th Cir. 2000) ........................................ 5

*Home Star Bank & Fin. Servs. v. Emergency Care & Health Org., Ltd.,*
2014 IL 115526, 6 N.E.3d 128 (2014) .................................................................................. 13

*Independent Voters v. Illinois Commerce Com.,* 117 Ill. 2d 90, 510 N.E.2d 850 (1987) ....................... 14

*In re Estate of Harmston*, 10 Ill. App. 3d 882, 295 N.E.2d 66 (3rd Dist. 1973) ............................. 9

*In re Facebook Biometric Info. Privacy Litig.,* No. 15-cv-03747-JD, 2016 U.S. Dist. LEXIS 60046
(N.D. Cal. May 5, 2016) .................................................................................................. 6

*Kehoe v. Fid. Fed. Bank & Trust,* 421 F.3d 1209, 1214 (11th Cir. 2005) .................................... 10

*Liddle v. Salem Sch. Dist. No. 600*, 249 Ill. App. 3d 768, 619 N.E.2d 530 (5th Dist. 1993) .......... 7

*Lujan v. Defenders of Wildlife*, 504 U. S. 555 (1992) .......................................................... 4, 5

*Oshana v. Coca-Cola Co.,* No. 04 C 3596, 2005 U.S. Dist. LEXIS 14184
(N.D. Ill. July 13, 2005) ................................................................................................. 16

*Padilla v. Dish Network L.L.C.,* No. 12-cv-7350, 2013 U.S. Dist. LEXIS 101120
(N.D. Ill. July 19, 2013) ............................................................................................ 8, 10, 14

*People ex rel. Madigan v. United Const. of Am., Inc.*, 2012 IL App (1st) 120308,
981 N.E.2d 404 .......................................................................................................... 14

*Perrone v. GMAC,* 232 F.3d 433 (5th Cir. 2000). ................................................................... 12

*Public Citizen v. United States Dep't of Justice*, 491 U.S. 440 (1989) ........................................... 5

*Quilici v. Morton Grove,* 695 F.2d 261 (7th Cir. 1982) .......................................................... 6

*Raintree Homes, Inc. v. Vill. of Long Grove,* 209 Ill. 2d 248, 807 N.E. 2d 439 (2004) ................... 14

*Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) ........................................ 7

*Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424 (S.D.N.Y. 2015) ................................. 8

*Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510 (7th Cir. 2015) .......................... 16

*Silha v. ACT, Inc,* 807 F. 3d 169 (7th Cir. 2015) ............................................................. 4

*Spokeo, Inc. v. Robins*, 194 L. Ed. 2d 635 (2016) ........................................................ 5, 6

*Std. Mut. Ins. Co. v. Lay,* 2013 IL 114617, 989 N.E.2d 591 (2013) .................................. 12

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) .......................... 8, 9, 10, 14

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ................................................. 6

*Utah v. United States*, 528 F.3d 712 (10th Cir. 2008) ..................................................... 8

*Williams v. Merle Pharm.*, No. 15-cv-1262, 2015 U.S. Dist. LEXIS 141463
(C.D. Ill. Oct. 19, 2015) ................................................................................................ 11

## STATUTES

### Illinois Statutes

70 ILCS 405/3.20 ......................................................................................................... 14

215 ILCS 155/25 .......................................................................................................... 14

740 ILCS 14/1 *et seq.* .................................................................................................. 1

740 ILCS 14/5 ........................................................................................................... 2, 12

740 ILCS 14/5(c) .......................................................................................................... 3

740 ILCS 14/5(f) ........................................................................................................... 3

740 ILCS 14/10 ........................................................................................................... 2, 3

740 ILCS 14/15(a) ......................................................................................................... 2

740 ILCS 14/15(b) ....................................................................................................... 2, 7

740 ILCS 14/15(e)(2) ..................................................................................................... 3

740 ILCS 14/20 ........................................................................................................ 3, 12, 14

740 ILCS 14/20(1) ...................................................................................................... 1, 10

740 ILCS 120/3 ............................................................................................................. 14

765 ILCS 905/4 ............................................................................................................. 13

765 ILCS 910/9 ............................................................................................................. 14

775 ILCS 5/1-103(B) ...................................................................................................... 14

810 ILCS 5/1-201(b) ........................................................................................................ 13

810 ILCS 5/2A-402(c) ...................................................................................................... 13

815 ILCS 305/30 ............................................................................................................... 14

815 ILCS 505/10a ............................................................................................................. 14

815 ILCS 530/1 *et seq.* ....................................................................................................... 1

815 ILCS 530/5(1)(F) .......................................................................................................... 1

**Federal Statutes**

5 U.S.C. § 552a(g)(1)(A) .................................................................................................. 10

18 U.S.C. § 2710 ................................................................................................................. 9

47 U.S.C. § 338(i)(1) ........................................................................................................ 10

47 U.S.C. § 338(i)(6) ........................................................................................................ 10

## SECONDARY SOURCES

Black's Law Dictionary (10th ed. 2014) .......................................................................... 12

Cass R. Sunstein, Informational Regulation and Informational Standing: Akins and Beyond,
147 U. Penn. L. Rev. 613 (1999) ....................................................................................... 7

Kathryn Zeiler & Kimberly D. Krawiec, Common-law Disclosure Duties and the Sin of Omission:
Testing Meta-Theories, 91 Va. L. Rev. 1795–1882 (2005). ............................................ 7

Samuel D. Warren & Louis Brandeis, The Right to Privacy,
4 Harv. L. Rev. 193, 198 (1890) ........................................................................................ 6

## I.    INTRODUCTION

Defendant captured, collected, and stored Plaintiff's and other customers' fingerprints,[1] and their biometric identifiers and information, as part of its locker rental process at Union Station. Plaintiff seeks relief under the law governing these transactions, the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, and for Unjust Enrichment. Via its Motion, Defendant seeks to evade the fact that it has been systematically violating BIPA. BIPA provides a "right of action" for "[a]ny person aggrieved by a violation of this Act" to recover "liquidated damages of $1,000 or actual damages, whichever is greater." 740 ILCS 14/20(1). Defendant argues Plaintiff must allege actual, concrete harm, apart from a BIPA violation, to show she was "aggrieved" by the BIPA violations and thus to have Article III standing; that Plaintiff has failed to allege it; and that her separate unjust enrichment claim is not well-pleaded. As set forth below, these arguments fail.

## II.    BACKGROUND

### A.    The Biometric Privacy Information Act ("BIPA").

In 2008, 740 ILCS 14/1 *et seq.*, "BIPA" was passed to restrict the collection and retention of "biometric identifiers" (such as fingerprints and retina scans) and "biometric information" (information based on a biometric identifier used to identify an individual) (collectively, "Biometrics" or "Biometric Information"). Another Illinois law already provides consumers relief in the event of a data breach that discloses, among other things, biometric data.[2] What Defendant seemingly wants to obscure is that BIPA creates rights and remedies specific to Biometrics and that apply *whenever* personal Biometrics are *collected*, as opposed to just stolen, in *any* context.

BIPA compels notices, disclosures, policies, and a written consent *before* biometric data is

---

[1] "Fingerprint" refers to a fingerprint or finger scan.

[2] The Personal Information Protection Act ("PIPA"), 815 ILCS 530/1 *et seq.*, makes violations actionable under the Illinois Consumer Fraud Act, Sec. 530/20, and by way of a 2016 amendment, P.A. 99-503, effective January 1, 2017, covers biometric data breaches, Sec. 530/5(1)(F). If BIPA is mainly a Biometric data breach law as Defendant opines, one wonders why the General Assembly so amended PIPA.

collected and in order to collect it. These requirements are *in addition to* requirements that apply to the information after it has been obtained. The manifest purpose of the consent and disclosure provisions is to provide consumers a valuable opportunity to consider, track, understand and control the collection of the data and whether it is collected, and to more freely engage in Biometrics commerce. When the Illinois General Assembly adopted BIPA it stated:

> (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.
> ...
> (f) The full ramifications of biometric technology are not fully known.
> (g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. 740 ILCS 14/5.

BIPA defines "[b]iometric identifier" to include a "fingerprint" and "biometric information" regardless of how it is "captured" or "converted." 740 ILCS 14/10. The Act requires any "private entity in possession of [Biometrics] [to] develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying [Biometrics] when the initial purpose for collecting the information has been satisfied or within 3 years of the individual's last interaction with the private entity." 740 ILCS 14/15(a). BIPA also states:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS 14/15(b).

The Illinois legislature comprehensively regulates biometric transactions because biometric

information, unlike, e.g., credit card or social security numbers, is inherently immutable, thus creating special risks. 740 ILCS 14/5(c). With or without providing other personal information with Biometrics, for example, one's Biometrics can be used to create a new, phony identity. If stolen and used for malicious purposes, Plaintiff cannot change her fingerprint identifiers. *See* 740 ILCS 14/5(f) ("The full ramifications of biometric technology are not fully known.").[3] BIPA provides only a private right of action. 740 ILCS 14/20.

### B.  Plaintiff alleges that Defendant violated BIPA.

Defendant, which has provided locker rental services *en masse* at least since 2008, has used a biometric fingerprint scanning and identification process to rent its Union Station lockers in Chicago. ¶¶[4]18-19, 35. Plaintiff uses and pays for Defendant's fingerprinting lockers at Union Station – the only lockers available there – on holidays, when she travels by train from Union Station to visit family out of town. ¶27. To rent a locker at Union Station, a customer must use Defendant's fingerprinting system. The system actually works to recognize the fingerprint by collecting, recording, storing, and accessing customer Biometrics. ¶¶18-23. Under BIPA, Defendant must inform Plaintiff that it is collecting and storing Biometrics; it must tell its customers, in writing, all specific purposes and the length of time for which their Biometrics are being collected, stored and used; and it must obtain their written consent – all prior to capturing the Biometrics. It must also develop and make publicly available a written policy for Biometrics retention and destruction. But, it took Plaintiff's Biometrics without fulfilling *any* of these requirements. ¶¶24-34. In its Motion, Defendant does not deny it violated BIPA or the facts alleged, which establish the violation.

---

[3] That other personal information is not alleged to be tied to Plaintiff's fingerprint (Mem. at 2, n. 1) is beside the point, for BIPA does not require a tie to that information. In fact, BIPA segregates other "Confidential and sensitive information" "that can be used to uniquely identify an individual or an individual's account or property" and imposes additional requirements in connection with that. 740 ILCS 14/10, 14/15(e)(2).
[4] Paragraphs of the Complaint are referenced herein as "¶."

## III.   ARGUMENT

Under Rule 12(b)(6), a claim is facially plausible if pleaded facts, accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a Rule 12(b)(1) facial challenge to Article III standing, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Silha v. ACT, Inc*, 807 F. 3d 169, 173 (7th Cir. 2015).

### A.      Plaintiff adequately alleges Article III standing.

Defendant's standing argument is this:

". . . nowhere does Plaintiff allege that her fingerprint (or anyone else's fingerprint) has been misused or even compromised and, therefore, she cannot demonstrate an injury-in-fact that is concrete and particularized and actual or imminent." Mem. at 4.

This contention is in error. BIPA establishes *conditions precedent* to acquisition of the information; Plaintiff's biometric information was "misused" at the moment Defendant fingerprinted Plaintiff and collected and stored her Biometrics without meeting the law's preconditions. Having virtually admitted the material facts alleged that establish the BIPA violations, Defendant's argument is not with Plaintiff, but with the legitimacy of the law itself. Its claim is that the General Assembly has not made actionable, nor prescribed damages for, the behavior it has prohibited. In Defendant's view, BIPA can have no effect, and the General Assembly can prescribe no damages, unless Biometrics are compromised after collection. Defendant's position is neither supported by BIPA, nor consistent with Article III jurisprudence.

### 1.      The Article III test.

Article III standing is established when a Plaintiff shows (1) an injury in fact – "an invasion of a legally protected interest which is concrete and particularized"[5] and "actual or imminent, not

---

[5] Defendant cannot seriously dispute that Plaintiff's interest is "particularized," because as alleged, the violations affected Plaintiff individually, Defendant violated her own rights, and she was personally affected. *Lujan v.*

conjectural or hypothetical" – that is (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Here, Plaintiff alleges the invasion of concrete legally protected interests; caused by Defendant's conduct; which would be remedied by a favorable decision.

## 2. Plaintiff alleges informational injuries.

The Supreme Court has repeatedly found a person is injured in fact and has suffered an actual, concrete injury when deprived of information that a law requires be provided. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) (a plaintiff suffers injury-in-fact that is sufficiently concrete and palpable when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute); *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449 (1989) (a denial of access to information "constitutes a sufficiently distinct injury"); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (legal right to information required by statute conferred standing, even for testers). In these cases, irrespective of whether it was a private lobby group, a government agency, or a landlord that was required to provide the information, failure to provide it established Article III injury.[6] The Supreme Court recently affirmed all of these decisions and holdings in *Spokeo, Inc. v. Robins*, 194 L. Ed. 2d 635, 640, 646, and 650 (2016). The same injuries are alleged here.

Defendant attempts to showcase *Spokeo* via its Notice of Additional Authority, but noticeably overlooks the relevant body of law discussed and reaffirmed in *Spokeo*. In *Spokeo*, the lower court had not addressed the concreteness requirement, so the Court vacated and remanded for a determination of Article III standing. *Spokeo*, 194 L. Ed. 2d at 641. *Spokeo* reiterated *Lujan*'s holding that,

---

*Defenders of Wildlife*, 504 U.S. 555, 601 n. 1 (1992); *Spokeo, Inc. v. Robins*, 194 L. Ed. 2d 635, 644 (2016) (citation omitted).

[6] The Seventh Circuit has also endorsed informational injury in fact. *See Heartwood, Inc. v. United States For. Serv.*, 230 F.3d 947, 952 n.5 (7th Cir. 2000) ("We find Heartwood's argument as to 'informational' injury compelling as well."); *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 958 (7th Cir. 2005) (informational standing exists where the statute has a goal of providing information to the public).

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Id.*, and noted that a "bare procedural violation, divorced from any concrete harm." does not confer standing. *See Spokeo*, 194 L. Ed. 2d at 645 (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009)). These holdings are not novel. Nor is the notion that Article III is not "automatically satisfie[d] . . . whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 194 L. Ed. 2d at 639. These reiterations of existing law in *Spokeo* have nothing to do with this case.

What Defendant ignores is that *Spokeo* also simultaneously reaffirmed *Akins*, *Havens* and *Public Citizen*, singling them out as cases where harm to a "concrete interest" establishes injury in fact, without need to allege "actual" or "additional" harm beyond the invasion of a statutorily created right to protection of that interest. *Id.* at 639-40, 646, and 650.

Defendant also ignores that the *Spokeo* Court indicated a court should look to the judgment of the legislature, and to historical practice to determine whether harm to the interest invoked by Plaintiff establishes standing under Article III. *Id.* at 639.

The rights that BIPA protects are long recognized by courts. *See id.* at 645; *see also In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-03747-JD, 2016 U.S. Dist. LEXIS 60046, at *33-34 (N.D. Cal. May 5, 2016) ("…the plain language of BIPA indisputably evinces a fundamental privacy policy of Illinois"). Violations of privacy rights have historically been grounds for access to the courts. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 486 (1965); *Quilici v. Morton Grove,* 695 F.2d 261, 279-80 (7th Cir. 1982); Samuel D. Warren & Louis Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 198 (1890) ("The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others").[7] Both legislative judgment

---

[7] There are ample historical analogs to the informational injuries as well. The common law tradition and a generation of statutory law have imposed heightened information disclosure requirements in cases where parties

and historical practice indicate that harms under BIPA fall comfortably within the zone of Article III injury. This case involves *concrete personal interests in the collection of Biometrics*. In protecting such interests, BIPA aligns with long-recognized law in Illinois, and the country.

### 3. Defendant unlawfully took Plaintiff's Biometrics.

BIPA pre-conditions the right to collect biometric information, 740 ILCS 14/15(b), and Smarte Carte failed to meet the law's preconditions (¶12). Violating BIPA, Defendant illegally fingerprinted Plaintiff, and captured, collected, and created Biometrics that belonged to her. "Smarte Carte scans its locker customers' fingerprints; obtains, collects, records and stores 'biometric' identifiers and information gleaned from the fingerprint; and then stores that data" (¶4). Illinois, moreover, has historically recognized intangible personal property rights in information.[8] That Plaintiff used the only lockers available at Union Station, and was not arm-wrestled to the fingerprint scanner (*see* Mem. at 4) does not cancel her harm or make its source untraceable. Only Defendant could facilitate informed consent and provide the information mandated by the law.

### 4. Defendant's arguments are off-target.

Some of Defendant's arguments are disputes with "straw men" of its own creation. That is, it argues with its own caricature of Plaintiff's claim instead of the claim that is actually asserted. Those arguments rely on cases, involving different injuries (*e.g.,* risk of harm resulting from a data breach), laws that either require additional damages, or do not create informational requirements or collection restrictions, and very different facts. *See Remijas v. Neiman Marcus Group, LLC,* 794 F.3d 688 at 695 (7th

---

have unequal access to information, and a wealth of informational regulation, or mandating disclosure as a pervasive regulatory tool via statutory enactments permitting private remedies in the courts. *See* Cass R. Sunstein, Informational Regulation and Informational Standing: Akins and Beyond, 147 U. Penn. L. Rev. 613 (1999) (cited in *Spokeo*); Kathryn Zeiler & Kimberly D. Krawiec, Common-law Disclosure Duties and the Sin of Omission: Testing Meta-Theories, 91 Va. L. Rev. 1795–1882 (2005).

[8] The unlawful taking of Biometrics closely resembles protections that Illinois law has afforded to informational property. *See First Nat'l Bank v. Department of Revenue,* 85 Ill. 2d 84, 421 N.E.2d 175 (Ill. 1981); *Liddle v. Salem Sch. Dist. No. 600,* 249 Ill. App. 3d 768, 619 N.E.2d 530 (5th Dist. 1993).

Cir. 2015), *Padilla v. Dish Network L.L.C.*, No. 12-cv-7350, 2013 U.S. Dist. LEXIS 101120 (N.D. Ill. July 19, 2013), and *Sterk v. Redbox Automated Retail, LLC,* 672 F.3d 535, 536 (7th Cir. 2012), involving information "lawfully obtained" and not addressing Article III standing, and similar cited cases at Mem. at 4-6.

Defendant notes that a state statute by itself cannot confer standing, but the statement is meaningless. Neither does the existence of a speed limit establish standing to charge a speeding violation – one must actually be speeding. Moreover, the law need not wait until a speeder causes an accident; the impaired safety interest creates actionable harm irrespective of whether the speeder causes additional harm, e.g., in the form of an accident. Similarly, standing exists here because the BIPA violation damages interests that are long-recognized, both in Illinois law, and more generally.

Consumers possess BIPA rights to know about how their collected Biometric information will be treated before they provide it. If they have no recourse until some other, additional, harm transpires, then they might as well not have these rights at all.

Notably, Defendant's analysis of some of its cases ignores important language. *See, e.g.,* Mem. at 6 (citing *Conrad v. Boiron, Inc.*, No. 13 C 7903, 2015 U.S. Dist. LEXIS 152981, at *5 (N.D. Ill. Nov. 12, 2015) ("A state statute, *however,* cannot confer Constitutional standing *when the plaintiff has not suffered the requisite harm.*") (added emphasis identifies words not quoted in Defendant's Mem.); *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 433–35 (S.D.N.Y. 2015) (stating that a "bare violation of a state statute," without concrete harm, cannot confer Article III standing)). Contrary to Defendant's contention, courts, including the Seventh Circuit, routinely hold that the invasion of state-created rights satisfy Article III injury.[9] It depends only on the nature of the interest.

---

[9] *See FMC Corp. v. Boesky,* 852 F.2d 981, 993 (7th Cir. 1988); *Cantrell v. City of Long Beach,* 241 F.3d 674, 684 (9th Cir. 2001); *Utah v. United States*, 528 F.3d 712, 721 (10th Cir. 2008); *Beyond Sys. v. Kraft Foods, Inc.*, 777 F.3d 712, 716 (4th Cir. 2015).

### B. Plaintiff is aggrieved.

Defendant argues that BIPA's use of the word "aggrieved" requires Plaintiff to plead additional damages. Mem. at 7-10. Defendant is wrong. Plaintiff is aggrieved because she had a legal right to BIPA protections that include the right to receive certain disclosures and information from Defendant. The right implicates an interest long-recognized in the law and specifically protected by BIPA. When Defendant denied to Plaintiff the required disclosures and information, and unlawfully collected her Biometrics, it violated that right, impaired the interest, and left her aggrieved. These are actual harms that violate the rights prescribed by BIPA.

Defendant contends the word "aggrieved" reflects a heightened injury requirement that Plaintiff's complaint does not satisfy. The Illinois Supreme Court and Appellate Courts contradict Defendant's position. "A person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of....'Aggrieved' means having a substantial grievance; a denial of some personal or property right." *Glos v. People*, 259 Ill. 332, 340, 102 N.E. 763, 766 (1913); *see also American Surety Co. v. Jones,* 384 Ill. 222, 229-30, 51 N.E.2d 122, 125 (1943) (same); *In re Estate of Harmston*, 10 Ill. App. 3d 882, 885, 295 N.E.2d 66, 68 (3rd Dist. 1973) ("'Aggrieved' means having a substantial grievance; a denial of some personal or property right."); *Greeling v. Abendroth,* 351 Ill. App. 3d 658, 662, 813 N.E.2d 768, 772 (4th Dist. 2004) ("...the plaintiff must be "aggrieved"[citation], that is, the plaintiff must 'suffer[] from an infringement or denial of legal rights'"). These decisions, unlike those Defendant cites, actually define or discuss the general, legal meaning of "aggrieved," and do so irrespective of case context.

Defendant relies on federal and out-of-state cases, none of which are controlling under Illinois law, and many of which are distorted by Defendant's presentation. One of these is *Sterk,* 672 F.3d 535 (Mem. at 9), a case challenging the failure to destroy records as required by subsection (e) of the Wrongful *Disclosure* of Videotape Rental or Sales Records provision of the Act. 18 U.S.C. § 2710

(emph. added). *Sterk* presented a technical issue of statutory construction: whether a violation of subsection (e) could be enforced by a private action provision found in the *preceding* subsection (c). The Court held that "(c)" did not provide a cause of action for violation of "(e)" because "(e)" was placed below "(c)" in the statute. *Sterk*, 672 F.3d at 538.

*Sterk* and similar cases cited by Defendant involve laws that make the presence of actual damages, beyond impairment of the interest recognized by the statute, a prerequisite to recovery of the minimum liquidated damages. *See Doe v. Chao*, 540 U.S. 614, 619 (2004) (quoting 5 U.S.C. § 552a(g)(1)(A)); *Padilla*, 2013 U.S. Dist. LEXIS 101120, at *8. *None* of these cases involve an informational injury. *See Padilla*, 2013 U.S. Dist. LEXIS 101120, at *18-22 (statute only required notice to current subscribers); *Sterk*, 672 F.3d at 536 (addressed statutory construction); *Doe*, 540 U.S. at 617 (misuse of Social Security number). Thus: "The [*Doe*] Court found that an award of statutory damages required a demonstration of actual damages -- but only because of the text of the statute itself." *Follman v. Vill. Squire, Inc.*, 542 F. Supp. 2d 816, 822 (N.D. Ill. 2007); *see also Doe*, 540 U.S. at 620-627.[10]

BIPA, by contrast, establishes an informational injury and specifies liquidated damages in the *alternative*, providing for "liquidated damages of $1,000 *or* actual damages." 740 ILCS 14/20(1) (emph. added).

Contrary to Defendant's contentions, *Padilla* reinforces that Plaintiff *has* been injured and is "aggrieved." The *Padilla* court's conclusion that the plaintiff had not alleged injury was limited to Count I, which alleged violation of § 338(i)(6) of the Satellite Home Viewer Extension and Reauthorization Act ("SHVERA"). *See Padilla*, 2013 U.S. Dist. LEXIS 101120, at *7-18. The Court's dismissal of Count II was unrelated to injury. Count II alleged violation of § 338(i)(1) for not sending plaintiff a yearly notice. The court dismissed Count II based on its conclusion that the statute did not

---

[10] *Doe*, moreover, relies heavily on language in the action provision not present in BIPA. *See Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1214 (11th Cir. 2005).

require defendant to send plaintiff a notice. *See id.* at *18-22.

*Williams v. Merle Pharm.*, No. 15-cv-1262, 2015 U.S. Dist. LEXIS 141463 (C.D. Ill. Oct. 19, 2015), Mem. at 9, does not define "aggrieved" or construe "aggrieved" to require actual damages. To the degree it is relevant, it *supports* Plaintiff's claims. The private action provision of the statute in *Williams* was expressly limited to particular violations (*i.e.,* "claims for wages"). *Id.* The statute in *Williams* did not provide statutory damages, and it gave the State enforcement rights, leading the court to conclude the plaintiff had no claim under the statute.

By contrast, BIPA has a statutory damages provision, does not provide a government enforcement mechanism (which means that is either enforced by consumers or not at all) and does not limit the right-of-action provision by tying it uniquely to violations of a subset of the provisions in the statute. The *Williams* court rejected the argument Defendant makes here, noting: "*the phrase* '[a]ny employee *aggrieved by a violation of this Act ... gives the Court reason to* refrain *from finding the IWPCA does not allow private causes of actions....*" *Williams*, 2015 U.S. Dist. LEXIS 141463, at *10 (emph. added).

In *Diedrich v. Ocwen Loan Servicing, LLC,* No. 13-CV-693, 2015 U.S. Dist. LEXIS 53996 (E.D. Wis. Apr. 24, 2015), Mem. at 10, the holding was that a plaintiff could not recover under a Wisconsin statute that limited recovery to a measure of loan origination costs or other actual damages, because she had *neither. Id.* at *19-27. *Diedrich* thus provides no guidance on the question of whether Plaintiff is "aggrieved" under BIPA. Similarly in *Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 472–73, 845 P.2d 685, 690–91 (1993), Mem. at 10, the court, interpreting the *Kansas* consumer fraud act, did not hold that "aggrieved" requires or means actual damages. Plaintiffs in that case simply did not see the misleading advertisement on which they predicated their claims.

Contrary to Defendants contention about "plain and ordinary" meaning of "aggrieved" (Mem.

11

at 9),[11] Black's Law Dictionary defines an "aggrieved party" as:

> "A party entitled to a remedy; esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." PARTY, Black's Law Dictionary (10th ed. 2014) (emph added).

The "personal" rights (and "property" rights) at issue, and Plaintiff's entitlement to a remedy, make Plaintiff an "aggrieved party."

Restricting recovery under BIPA would contravene the statute's plain language and vitiate its purposes. Had the legislature intended to limit BIPA recovery persons who suffer "actual damages" of a type Defendant is willing to recognize, it would have said so. Instead, BIPA refers to "actual damages" as an alternative measure of recovery. 740 ILCS 14/20. In this regard, though arguably more meaningful and relevant to consumers, BIPA is constructed not unlike other laws designed to protect consumers. *See Std. Mut. Ins. Co. v. Lay*, 2013 IL 114617, ¶¶ 31-32, 989 N.E.2d 591 (2013) (harms under the Telephone Consumer Protection Act "while small in reference to individual violations of the TCPA are nevertheless compensable and are represented by a liquidated sum of $500 per violation" as intended "at least in part, [as] an incentive for private parties to enforce the statute"); 47 U.S.C. 227(b)(3)(B) (TCPA right of action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater").[12]

Defendant's interpretation of "aggrieved" would void substantive protections of BIPA by

---

[11] The only BIPA statutory analysis that Defendant provides is that under Section 14/5: its view of "aggrieved" "…is the only construction consistent with the purpose of the Act as expressed by the legislative findings set forth in Section 5—to provide a private right of action for violations that result in data breach, identity theft or other injury from biometric-facilitated financial transactions or security screenings[]. 740 ILCS 14/5." (Mem. at 9.) But, Sec. 14/5 does not say that; it discusses identity theft and compromise of biometrics not as a cause of action, but rather, to demonstrate the significance, and immutable and harmful nature of biometrics. In fact, Sec. 14/5—which nowhere mentions or discusses rights of action, or "violations" that "result in data breach, identity theft or other injury" (Mem. at 9)—demonstrates a full-service approach to regulating Biometrics, including before, during and after collection. *See* 740 ILCS 14/5.

[12] Other courts, including the Seventh Circuit, have similarly found statutory liquidated damages are proper without actual damages, where liquidated damages are provided in the alternative to actual damages. *See Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir. 1981); *Espinoza v. Stokely-Van Camp,* 641 F.2d 535, 538-39 (7th Cir. 1981), *cert. den'd,* 453 U.S. 950; *Perrone v. GMAC,* 232 F.3d 433, 436-37 (5th Cir. 2000).

limiting an "aggrieved" party to a person injured by a *selective and additional* "violation of this Act." Specifically, Defendant's interpretation would limit the law's protection to circumstances where Biometrics were unlawfully "sold" or "disclosed" – conduct covered by Secs. 14/15(c) or (d). Persons whose Biometrics were illegally collected in violation of Secs. 14/15(a) and (b) would be uniquely deprived recourse. Under Defendant's view, violations of subsections (a) and (b) can matter only if they *also* lead to further violations of subsections (c) or (d). No language in BIPA limits recovery this way. Reading Defendant's limitations into the Act improperly renders subsection (a) and (b) practically unenforceable and therefore meaningless, leading to a perverse and absurd result. *Home Star Bank & Fin. Servs. v. Emergency Care & Health Org., Ltd.,* 2014 IL 115526, ¶ 24, 6 N.E.3d 128 (2014); *Compton v. Ubilluz,* 351 Ill. App. 3d 223, 229, 811 N.E.2d 1225, 1230 (2nd Dist. 2004).

Illinois regularly uses the term "aggrieved" to characterize the kind of harm that arises from violation of a legal right that gives rise to a remedy; further harm, such as a failure to record a release of lien or an anticipatory repudiation of a lease is not necessary to establish that a person is "aggrieved." 765 ILCS 905/4; 810 ILCS 5/2A-402(c). The Uniform Commercial Code defines an "aggrieved party" as "a party entitled to pursue a remedy." 810 ILCS 5/1-201(b). In its chapter on leases, the UCC provides: "Anticipatory repudiation. If either party repudiates a lease contract with respect to a performance <u>not yet due</u> ... <u>the aggrieved party may suspend performance</u>." 810 ILCS 5/2A-402(c) (emphasis added). Similarly, the mortgage release statute states, "If any mortgagee or trustee, in a deed in the nature of a mortgage ... knowing the same to be paid, shall not, within one month after the payment of the debt secured ... comply with the requirements of Section 2 of this Act, he shall, for every such offense, be liable for and pay to the party aggrieved the sum of $200." 765 ILCS 905/4 (emphasis added). These are all situations where the right to a legal remedy is completely independent of whether the "aggrieved party" has yet suffered loss beyond the harm that is directly intertwined with the violation. The fact that "aggrieved" may appear in a statute that requires actual

damages does not mean that whenever the term appears statutory damages provisions are, as a practical matter, voided.[13] Yet, this is what Defendant insists.

Statutes are construed as written. *E.g., Ehredt v. Forest Hospital, Inc.,* 142 Ill. App. 3d 1009, 1012, 492 N.E.2d 532, 535 (1st Dist. 1986) (If the legislature intended a stricter standard, it could have included that in the statute, and therefore, absent a stricter standard written into the statute, the court must follow the plain, ordinary meaning of the statutory language). The court should not condition recovery on requirements not written into BIPA.[14]

### C.    Plaintiff's claim for injunctive relief is proper.

Plaintiff's claim for injunctive relief (Count II) makes dismissal improper.  In a footnote Defendant argues otherwise, contending that a person cannot be "aggrieved," and cannot secure "injunctive relief" absent "actual harm…," Mem. at 8 n. 6. As set forth above, Plaintiff alleges actual harm. Furthermore, "absent the clearest [statutory] command to the contrary" injunctive relief is available irrespective of actual damages. *Sterk,* 672 F.3d at 539. *See also Padilla*, 2013 U.S. Dist. LEXIS 101120, at *15-17 (the only injury that needs to be alleged for injunctive relief is a defendant's failure to comply with the statute, and not actual harm). BIPA does not proscribe injunctive relief; it expressly provides for it. 740 ILCS 14/20.

### D.    Plaintiff states a claim for common law unjust enrichment.

Plaintiff may seek restitution for a refund of money paid in order to prevent unjust enrichment.

---

[13] The two statutes Defendant musters define "aggrieved" more broadly than pleaded, and fall comfortably within the permissive definition of "aggrieved" explained above. *See* 70 ILCS 405/3.20; 775 ILCS 5/1-103(B).
[14] The common meaning of "aggrieved" when used without further limitation in a statute is also illustrated by the many statutes that expressly use words like "damage" to indicate when actual damage must be present to seek relief.  Thus, the private right of action created by the Illinois Consumer Fraud Act states, "Any person who suffers **actual damage** as a result of a violation of this Act committed by any other person may bring an action against such person." 815 ILCS 505/10a (emphasis added) (quoted in *People ex rel. Madigan v. United Const. of Am., Inc.*, 2012 IL App (1st) 120308, ¶ 13, 981 N.E.2d 404, 410). *See also* Title Insurance Act, 215 ILCS 155/25 ("actual damages"); Parental Recovery Act, 740 ILCS 120/3 ("actual damages"); Automatic Telephone Dialers Act, 815 ILCS 305/30 (requiring "actual damages" and permitting statutory damages only "in addition to" such actual damages); Mortgage Escrow Account Act, 765 ILCS 910/9 ("actual damages").

*Independent Voters v. Illinois Commerce Com.,* 117 Ill. 2d 90, 510 N.E.2d 850 (1987)*; see also Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248, 807 N.E. 2d 439 (2004); *Cleary v. Philip Morris Inc.,* 656 F. 3d 511 (7th Cir. 2011); ¶¶ 70-73. Defendant acknowledges that unjust enrichment is adequately pleaded if a predicate cause of action is adequately pleaded. *See* Mem. at 11-12. The predicate cause is the BIPA violation.

Defendant, seemingly arguing against the position it takes on the BIPA claim, argues that the existence of an adequate remedy at law under BIPA – the remedy Defendant says does not exist – precludes a claim based on unjust enrichment. Defendant is wrong. Since the unjust enrichment claim is pleaded in the alternative, it would survive the pleading stage even if Defendant's BIPA arguments later prevailed. *See* ¶43; Fed. R. Civ. P. 8(d)(2); *see also, e.g., Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-cv-05836, 2015 U.S. Dist. LEXIS 63789 at *23 (N.D. Ill. May 15, 2015). Moreover, the unjust enrichment claim presented in this case would only be improper "*if* an express contract exists *to govern the parties' conduct*." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013)(emph. added). Defendant has not shown an express contract. None is pleaded. Nor would there be an express contract governing the conduct where, as here, Defendant failed to raise the issue when renting its lockers.

Finally, contrary to Defendant's contention (Mem. at 12-13),[15] Plaintiff alleges the "detriment" required for unjust enrichment three ways. First, she shows she was deprived of information and written notices Defendant was obligated to give her under BIPA. ¶¶ 30-31, 33-34, 69, 71. Second, she shows Defendant captured and collected her fingerprint and Biometrics without authorization and informed consent under BIPA. ¶¶ 4, 27-28, 69-70. Third, she shows Defendant made money from

---

[15] Defendant's comparison to *Cleary*, 656 F.3d at 519, is off-target. The risk of harm at issue there, initially predicated on a later-withdrawn claim for violation of the Illinois Consumer Fraud Act, is inapposite to the injuries and detriments alleged at bar.

Plaintiff's locker rentals that Plaintiff paid for, entitling her to recover money she paid, and which Defendant gained through unlawful conduct. ¶¶ 5, 27, 69, 71.[16]

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion.[17]

Respectfully submitted,

Adina McCollough, individually and on behalf
of all others similarly situated

By: /s/ Mark A. Bulgarelli
One of Plaintiff's Attorneys

---

[16] *See, e.g., Oshana v. Coca-Cola Co.,* No. 04 C 3596, 2005 U.S. Dist. LEXIS 14184, *29-38 (N.D. Ill. July 13, 2005) (restitution and disgorgement are permissible recoveries for unjust enrichment).

[17] Of course, assuming *arguendo* the Motion is granted, Plaintiff respectfully seeks leave to amend. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510, 519-20 (7th Cir. 2015).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 27th day of June 2016, the foregoing Plaintiff's Response to Defendant's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss was filed via the Court's CM/ECF system, which will send electronic notification to the attorneys of record at the e-mail addresses on file with the Court.

By: <u>/s/ Mark A. Bulgarelli</u>
One of the Plaintiff's Attorneys